# CV 13 - 6324

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

JAMES FORRESTER,

|  | COMPLAINT AND |
| Plaintiff | JURY DEMAND |

-against-

Docket No.

CITY OF NEW YORK, POLICE OFFICER RAMON
CABRAL, POLICE OFFICER TRINA ANDREA,
UNDERCOVER OFFICER #25835, SERGEANT
DONALD BOYLE, POLICE OFFICERS JOHN DOE 1-2,

ECF CASE

Defendants.

------------------------------------------------------------------ x

Plaintiff James Forrester, by his attorney Cynthia H. Conti-Cook, of Stoll, Glickman &

Bellina, LLP, for his complaint against defendant New York Police Department officers,

alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C.

§1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and

Fourteenth Amendments, in addition to violations of the laws and Constitution of the

State of New York.

2.    The claim arises from a February 25, 2012 incident in which defendants, acting

under color of state law, arrested Mr. Forrester during a sting operation without probable

cause, forged arrest paperwork and falsely accused him of patronizing a prostitute.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further

relief as the Court deems just and proper to compensate him for damages to reputation and costs associated with defendants' seizure of his vehicle.

## JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD

personnel obey the laws of the United States and the State of New York.

10.   POLICE OFFICER RAMON CABRAL was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant CABRAL was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant CABRAL was under the command of the 72nd precinct on the date of the incident. While an officer at the 72nd precinct, Doe's supervisors failed to train, supervise, discipline and control CABRAL. On information and belief, at all times relevant hereto, Defendant CABRAL was under the command of the 72nd precinct and is sued in his individual capacity.

11.   POLICE OFFICER TRINA ANDREA was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant ANDREA was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of her fellow officers when she observed them arresting plaintiff without probable cause. Upon information and belief, defendant ANDREA was under the command of the 72nd precinct on the date of the incident. While an officer at the 72nd precinct, ANDREA supervisors failed to train, supervise, discipline and control ANDREA. On information and belief, at all times relevant hereto, Defendant ANDREA was under the command of the 72nd precinct and is sued in her individual capacity.

12.   UNDERCOVER OFFICER #25835 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant #25835 was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when she observed them arresting plaintiff without probable cause. Upon information and belief, defendant #25835 was under the command of the 72nd precinct on the date of the incident. While an officer at the 72nd precinct, #25835 supervisors failed to train, supervise, discipline and control #25835. On information and belief, at all times relevant hereto, Defendant #25835 was under the command of the 72nd precinct and is sued in her individual capacity.

13.   SERGEANT DONALD BOYLE was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant BOYLE was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant BOYLE was under the command of the 72nd precinct on the date of the incident. While an officer at the 72nd precinct, Doe's supervisors failed to train, supervise, discipline and control BOYLE. On information and belief, at all times relevant hereto, Defendant BOYLE was under the command of the 72nd precinct and is sued in his individual capacity.

14.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of

the City and State of New York.

## NOTICE OF CLAIM

15.    Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL CHARGES

16.    On February 25, 2012, at approximately 9:10 p.m., Mr. Forrester was driving towards his home, which he shared at the time with his wife and two children, at 5001 10th Avenue, Brooklyn, NY.

17.    While he was at a stop light, a woman approached his passenger side window and asked "How are you doing?".

18.    Mr. Forrester answered, "What's up?"

19.    The woman asked "Do you have any money?"

20.    Mr. Forrester answered "Yes".

21.    Without the woman asking anything else, and without Mr. Forrester saying or communicating anything else otherwise, he was suddenly surrounded by police officers.

22.    Defendants removed Mr. Forrester from his vehicle and took him to a police van. Over the hour, several other men were arrested by the same team.

23.    Mr. Forrester was charged with Patronizing a Prostitute. Defendants made false accusations in the criminal complaint and all criminal charges were dismissed on June 11, 2012 when the judge found that the arrest paperwork was forged.

24.    While Mr. Forrester was "released on recognizance" from arraignments after

approximately 30 hours in custody, his vehicle was seized as arrest evidence and only returned to him following expensive forfeiture proceedings.

25. As a result, Mr. Forrester lost job opportunities and had transportation expenses.

26. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

27. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

DAMAGES

28. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

6

e.      Physical pain and suffering;

f.      Emotional trauma and suffering, including fear, embarrassment,

humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.      Loss of liberty;

h.      Attorney's and court fees; and

i.      Lost wages.

### FIRST CAUSE OF ACTION
Defendants Falsely Arrested and Falsely Imprisoned
Plaintiff Under 42 U.S.C. § 1983

29.   The above paragraphs are here incorporated by reference.

30.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

31.   The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

32.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

33.   Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

34.   At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

35.   All of this occurred without any illegal conduct by plaintiff.

36.   All charges were dismissed.

37.   The officer defendants acted under pretense and color of state law and in their

individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

38.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

39.    The above paragraphs are here incorporated by reference.

40.    The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

---

[1] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

41.   The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

42.   However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have

incurred large sums of civil rights liability. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

43.    The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, including patterns of forged paperwork in operations similar to the one that led to plaintiff's arrest, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

44.    The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident.    The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers forge arrest paperwork, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.    Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

45.    The City has been alerted to the regular use of false arrests by its police officers,
through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper
reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless
exhibited deliberate indifference to such false arrests; that deliberate indifference caused
the violation of plaintiff's constitutional rights in this case. In 2009, New York City has
seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out
more than $117 million in fiscal year 2009, compared to $80 million in 2008.[4] In the past
ten years, the City of New York has paid nearly a billion dollars on lawsuits brought
against the NYPD.[5]

46.    Nevertheless, the City has repeatedly resisted attempts to catalog even basic
information gleaned from civil rights lawsuits that could improve training, leadership,
supervision, and discipline in the NYPD.  The City's deliberate indifference towards the
contents of civil rights litigation, towards individual officers repeatedly named in
lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of
misconduct that arise in civil rights litigation has caused the constitutional violations
against plaintiff.

47.    Additionally, according to a report of the New York City Bar Association issued
in 2000, the City has isolated its law department from the discipline of police officers.
Civil rights lawsuits against police officers have no impact on the officers' careers,
regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits.

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at
http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18,
2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers
Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15,
2010 last available on December 9, 2010.

Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police .department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

48.  Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

49.  All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the

department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

50.    The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

51.    Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:

      Brooklyn, New York

Respectfully yours,

TO:

      City of New York
      100 Church Street
      New York, NY 10007

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com